**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HOPE ELLY & PATRICK DUNN,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION** |
| | ) | 1:18-cv-244-HSO-JCG |
| **METRO FOODS OF PASS ROAD LLC** | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT

Comes now the Plaintiffs, Hope Elly & Patrick Dunn, ("hereinafter Plaintiffs") through their undersigned counsel and files their Complaint under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 *et seq* for declaratory and injunctive relief.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.     This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and its implementing regulations, and this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.     Venue is proper in this Court, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.     Plaintiff, Patrick Dunn, resides in Andalusia, Alabama. On March 8, 2001, Mr. Dunn was injured in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed and uses a wheelchair for mobility and experiences restricted ability to use his hands, arms, and legs. Mr. Dunn is,

accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that he has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

4.      Plaintiff, Hope Elly, has experienced cerebrovascular accidents, which are more commonly known as strokes. These strokes have affected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical disabilities limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that she has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

5.      Defendant, Metro Foods of Pass Road LLC (hereinafter "Metro Foods"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from the property records on the Harrison County Geographical Information System, Metro Foods "owns" the real property and its improvements located at, 2431 Pass Rd, Biloxi, MS 39531 and "operates" the Popeye's restaurant located at the aforementioned address. 42 U.S.C. § 12182. The Popeyes is a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

6.      All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendant is a citizen thereof.

7.      Plaintiff Patrick Dunn enjoys vacationing in the Mississippi Gulf Coast area because he enjoys the different types of entertainment, nightlife, and food variety that the Gulf Coast offers. Plaintiff has recently visited the Popeyes restaurant, specifically and enjoys the New Orleans style menu and service offered at Popeyes quick service restaurants. He intends to continue going to Popeyes because he enjoys the cuisine and service offered there. Plaintiff will return not only to dine at the restaurant, but also to confirm compliance with the ADA by the Defendant. Plaintiff cannot provide a specific time and date upon which he will return to the restaurant because he has not and should not be expected to engage in such definite future planning. Plaintiff, like other fast food customers, often patronizes a fast food establishment on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to the restaurant.

8.      Plaintiff Hope Elly enjoys vacationing in the Mississippi Gulf Coast area because she enjoys the different types of entertainment, nightlife, shopping and food variety that the Gulf Coast offers. Plaintiff has recently visited the Popeyes restaurant, specifically and enjoys the New Orleans style menu and service offered at Popeyes quick service restaurants. She intends to continue going to Popeyes because she enjoys the cuisine and service offered there. Plaintiff will return not only to dine at the restaurant, but also to confirm compliance with the ADA by the Defendant. Plaintiff cannot provide a specific time and date upon which she will return to the restaurant because she has not and should not be expected to engage in such definite future planning. Plaintiff, like other fast food customers, often patronizes a fast food establishment on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to the restaurant.

9.     Because of the barriers described below and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendant's premises on the basis of their disabilities.

10.     Plaintiffs accordingly, have Article III standing to pursue this case because (1) They are persons with a disability, pursuant to the statutory and regulatory definition; (2) the Defendant's restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) They have suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices described herein, and by Defendant's denial of the use of the restaurant for their full and equal enjoyment as compared to people without disabilities, as described throughout the Complaint, and (4) Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers described remain at the facility.

## COUNT ONE
*Failure to Design and Construct in Accordance with the ADA Standards*
**(Architectural Barriers)**

11.     Plaintiffs incorporate by reference and reallege all the paragraphs above.

12.     The Defendant has failed to design and construct its restaurant in accordance with the ADA standards as required and it has failed to bring its restaurant into compliance with the applicable ADA Standards when the facility was subsequently altered.

13.     In enacting the ADA, Congress found, among other things that Persons with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation,

and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S. C. §12101(A)(5).

14.    In response to these findings, Congress explicitly stated that the purpose of the ADA was to:

> **A.** Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;
>
> **B.** Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and
>
> **C.** Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities. 42 U.S.C. § 12101(b)(1)(2) and (4).

15.    The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, were required to be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." was and is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for a covered entity failing to design and construct a facility in strict compliance with the ADA "new construction" Standards is if compliance with the Standards is "structurally impracticable". 42 U.S.C. §

12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

16.     New construction and alterations must strictly comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 or 2010 Standards apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date on which the last application for a building permit or permit extension is certified to be complete by a governmental entity before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date on which the last application for a building permit or permit extension is certified to be complete by a Governmental entity on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date on which the last application for a building permit or permit extension is certified to be complete by a Governmental entity on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the*

*facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

17. Based on publicly available information, Plaintiffs are informed and believe that the building in which the restaurant is located was constructed during 2000. Based on publicly available information, Plaintiffs are informed and believe that the restaurant underwent alterations and/or improvements after 2000.

18. The following is a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude or limit Plaintiffs' ability (because of their disabilities) to access the Property and/or fully and equally enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered in the facility. The citations are to the ADA 2010 Standards, because the 2010 Standards are applicable to modifications made after March 15, 2012. 28 C.F.R. § 36.406(5)(ii).

> A. Based on the total number of parking spaces at the restaurant, Defendant has failed to provide the required number of accessible parking spaces. § 208.2 and 508;
>
> B. Defendant has failed to provide at least one "van" accessible parking space measuring 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measuring 96 inches wide with a 96-inch-wide adjacent access aisle. § 208.2.4 and 502.2;

**C.**    Defendant has failed to provide required signage for accessible parking. § 502.6 and 502.2;

**D.**    Defendant has failed to provide an accessible route from the designated accessible parking and access aisles to the entrance because the running and/or cross slopes at the designated accessible parking spaces exceed the maximum slope requirement of "no less than 1:48 in any direction", in violation of §208 and §502.4;

**E.**    Defendant has failed to provide the required accessible routes from the parking lot to the entrance, including uneven paths of travel. §206, 402 and 403;

**F.**    Defendant has failed to provide an accessible route from the designated access aisle to the curb ramp because the route overlaps the traffic lane. §502.3.4;

**G.**    There is no level landing to provide the required maneuvering clearance at the top of the curb ramp at the entrance door. §405.7 and §404.2.4;

**H.**    The self-servicing condiment counters and self-servicing drink dispensers and counters fail to comply with the height and reach ranges of §308 and §904.5.1;

**I.**    The dining area does not contain the required 5% of the tables which meet the height and knee clearance requirements of §226 and §902.3;

**J.**    Neither restroom door has the required maneuvering clearance on either the push or pull side of the door. §404.2.4;

**K.**   Neither restroom has the required turning space or maneuvering clearance at the fixtures due to the size and configuration of the rooms and due to the swing of the entrance doors into the clear floor space. §604.3.1;

**L.**   The grab bars in the women's restroom fail to meet the required minimum length and height. §609;

**M.**   The lavatory pipes are not insolated in both restrooms. §606.5;

**N.**   The toilet paper dispenser in both restrooms is not located the required distance from the toilet. §604.7;

19.   The above itemization is not intended to be an all-inclusive list of the barriers, conditions and violations of the ADA encountered by Plaintiffs and existing at the Property. Although, the above listing, in and of itself, denied and still denies Plaintiffs, due to their disabilities, and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered at the Property in violation of the ADA. Plaintiffs require full and complete inspection of the Property, with full access thereto, in order to determine all of the Defendant's discriminatory acts violating the ADA relevant to Plaintiffs' disabilities.

20.   Plaintiffs believe that violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the Statute.

21.   Failure of Defendant to "design and construct" and alter this facility in compliance with the ADA's New construction standards is a direct violation of the statute, and more specifically, has a discriminatory impact on Plaintiffs and all persons similarly situated.

**COUNT TWO**
*Failure to modify policies, practices, and procedures which deny equal access to benefits and services*
**U.S.C. § 12182(b)(2)(A)(ii))**

**22.**    Plaintiffs incorporate by reference and reallege all the paragraphs above.

**23.**    The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, persons with disabilities must receive equal benefits as compared to the benefits received by persons without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." <u>See</u> 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

**24.**    ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Creating unlawful architectural barriers by failure to design, construct and alter the facility in accordance with the ADA Standards as set forth in Count One, herein, is only one component of the ADA's non-discrimination provisions in Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or

other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

25.     For this reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive individuals with disabilities the full and equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

26.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with*

*disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

27.     Accordingly, a place of public accommodation must modify any policy or practice that has the consequence of, or tends to deny, full and equal access to goods or services to persons with disabilities.

28.     The Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The architectural barriers identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

29.     Defendant's obvious disregard for compliance with the ADA's alteration standards reflects, at a minimum, a centralized policy which excludes persons with disabilities in the planning and implementation of alterations of the facility. Renovation of the facility afforded Defendant a post-construction opportunity to bring the restaurant into compliance with the ADA Standards, but Defendant's policies and practices of non-compliance with the ADA's alteration standards effectively ensure that persons with disabilities continue to have unequal access to the services and accommodations offered.

30.     Defendant's policies and practices at the restaurant literally create barriers and in so doing deny Plaintiffs the full and equal enjoyment of the establishment. Those policies and practices include but are not limited to:

   **A.** The Defendant denies accessible and useable parking to persons with disabilities;

   **B.** The existing signage displaying the international symbol of accessibility is identifying and directing individuals with disabilities to parking spaces that do

not comply with the ADA Standards for Accessible Design.  This policy has a discriminatory effect on persons with disabilities;

**C.** Defendant provides an unequal path of travel from the parking area to the entrance by maintenance of a non-compliant landing as a part of the path of travel. These barriers may force some persons with physical disabilities to seek assistance getting into and out of the restaurant. This discriminatory impact is a direct result of Defendant's policy of failure to maintain or provide a required accessible path of travel;

**D.** Defendant's seating arrangements in the dining area are designed, positioned, and oriented in a way that excludes or otherwise segregates persons who use wheelchairs. Persons using wheelchairs are therefore excluded from the diversity of seating locations and scenery offered to persons without disabilities;

**E.** Defendant has failed to maintain the surface of the sales and/or service counters so that they are free from obstructions. This has a discriminatory effect on individuals with disabilities attempting to use the counters;

**F.** Defendant makes its toilet facilities inaccessible for use by persons with disabilities by failing to maintain the required ADA accessible elements and fixtures within the restrooms so that Plaintiff is denied the opportunity to independently use all the features in the restroom;

**G.** Defendant's discriminatory policies and practices make its quick-service restaurant experience inaccessible for use by individuals with disabilities by failing to provide them an equal level of access and service;

H. Defendant's actions which are a direct result of its discriminatory policies effectively exclude customers with disabilities from enjoyment of the goods and services offered;

31.      As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant either has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

32.      To date, the Defendant's discriminatory policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations.

33.      Defendant, "owns" and "operates" the restaurant which is the subject of this action and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

34.      Plaintiffs, hereby, provides sufficient notice of their demands for a modification of Defendant's policies, practices, and procedures.

35.      Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

36.      Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
*Plaintiffs have been denied Full and Equal Enjoyment of the goods, services and facilities of the restaurant*
**(42 U.S.C. §12182(a))**

**37.**     Plaintiffs incorporate by reference and reallege all the paragraphs above.

**38.**     42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**39.**     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**40.**     Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous*

*and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

41.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

42.    The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

43.    The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

44.    To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need

to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

45.    Therefore, the Act applies to any barrier which denies to individuals with disabilities the *full and equal enjoyment* of the privileges and *services* offered by the public accommodation. 42 U.S.C. 12182.

46.    The keystone for analysis of full and equal enjoyment is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide guests with disabilities with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005).

47.    Plaintiffs specifically and definitely want to return to the Defendant's Popeyes restaurant. However, Plaintiffs demand to be afforded the same level of service and same experience that is offered to non-disabled individuals. The following is a list of some of the unequal treatment and services at Defendant's restaurant which have been experienced by Plaintiffs:

    **A.** Defendant fails to provide an accessible parking area and accessible route for individuals with disabilities which means Plaintiffs and others similarly situated cannot determine if there is a useable, accessible parking space, cannot independently exit a vehicle and use a mobility device to enter the Restaurant, and cannot independently travel from the parking area into the facility;

    **B.** The seating area is arranged and designed in a manner which excludes individuals with disabilities and denies them the same seating options enjoyed by non-disabled customers; because individuals with disabilities are forced to

sit at tables which do not provide the necessary, required knee and toe clearance and/or a useable height;

**C.** Defendant fails to provide an accessible restroom for persons with disabilities, which means that, unlike people without disabilities, individuals with disabilities are challenged or denied the opportunity to independently use the restroom, move throughout the restroom, and effectively use all the restroom fixtures and elements;

**D.** Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible dining experience has segregated or otherwise treated Plaintiffs and others similarly situated differently, in that the inaccessible features at the Restaurant make Plaintiffs dependent on family or an independent third party, which is not the same dining experience afforded to persons without disabilities;

48. Accordingly, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA because Defendant has segregated and separated persons with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

49. Defendant discriminated against Plaintiffs by denying Plaintiffs "full and equal

enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the Popeyes QSR.

50.     Defendant's conduct and Defendant's unequal treatment of Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiffs and others similarly situated unequally.

51.     Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to fail to maintain the required  accessible  features  at  Defendant's facility. 28 C.F.R.§ 36.211(a).

52.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

53.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, Hope Elly & Patrick Dunn demand judgment against the Defendant on Counts One, Two, and Three, and requests the following injunctive and declaratory relief:

1.  That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.  That the Court enter an order directing the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendant to provide Plaintiffs full and equal access both to the Popeyes QSR experience and to the use of the establishment, and further order Defendant to maintain the required accessible features at its facility so that Plaintiffs and others similarly situated are offered the same experience that is offered to members of the general public without disabilities, as stated in Count Three. 42 U.S.C. § 12182(a);

5.  That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such

reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

7.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this _23_ Day of July, 2018.

/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**Bradley D. McAdory**
MS BPR # 10545
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this _23_ day of July, 2018 to the following:


**Metro Foods of Pass Road LLC**
Attn.: Registered Agent
2431 Pass Rd.
Biloxi, MS 39531


/s/ _____
         **Pshon Barrett**
         MS- 2071
         ADA Group LLC
         4001 Carmichael Road, Suite 570
         Montgomery, Alabama 36106
         334.819.4030 p
         334.521.3859 f
         Pshon.Barrett@ADA-Firm.com
         *MAttorney for the Plaintiffs*